Affirmed and Memorandum Opinion filed December 18, 2008








Affirmed and Memorandum Opinion filed December 18, 2008.

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO.  14-07-00706-CR

NO.  14-07-00707-CR

____________

 

KEITH STUART HENRY, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 



 

On Appeal from the 262nd
District Court

Harris County, Texas

Trial Court Cause Nos.  1045670
& 1048519

 



 

M E M O R A N D U M   O P I N I O N

Keith Stuart Henry was convicted of two counts of
aggravated sexual assault of a child under fourteen years of age, and sentenced
to forty-five years= confinement in the Institutional Division
of the Texas Department of Criminal Justice for each count.  Henry now appeals
his convictions, asserting that he was denied his rights to effective
assistance of counsel at trial under both the Texas and United States
Constitutions.  We affirm.








BACKGROUND

Appellant and complainant=s mother, Gina
Hailey, had a dating relationship but never married.  Complainant was born
after Gina had ended the relationship.  Though appellant is complainant=s biological
father, he was not involved in her life for several years.  In fact, appellant
did not meet complainant until she was about four years old.  Gina had met
appellant through his sister, Sharay Henry.  After complainant was born she
played regularly with Sharay=s children.  During this time, complainant
knew appellant simply as AUncle Keith.@

Several years after complainant was born, Gina married
another man and had a child with him.  Similarly, appellant married and had two
other children with his wife, Shirley.  

Not long after complainant=s seventh
birthday, Gina decided to tell her that appellant was her biological father,
and to allow the two of them to spend time together.  Complainant began
visiting appellant, his wife, and their children in 2004.  Ultimately she began
to have overnight visits every other weekend at appellant=s apartment.

Shortly after complainant began spending the night at
appellant=s apartment, she developed a rash in her vaginal
area.  Appellant and his wife informed Gina of the rash, but all three of them
initially believed the rash to be an allergic reaction to toilet paper.  The
rash was treated with over-the-counter ointment.  A doctor examined complainant
during a well-child check-up in October 2004, and was not alarmed.








The rash continued to appear irregularly over the next few
months.  However, in May 2005, after complainant had spent a weekend visiting
appellant, Gina observed visible sores on complainant=s vaginal area as
well as around her buttocks.  Gina took complainant to see a doctor where she
learned that complainant was infected with the Herpes Simplex 1 virus.[1] 
Later it was discovered that both appellant and his wife also tested positive
for the same virus.                   

Before delivering the diagnosis to complainant=s mother, her
doctor privately asked complainant if she wanted to tell her anything. 
Complainant declined.  Later, after learning of her daughter=s condition, Gina
also asked complainant if there was anything she wanted to talk about.  Again,
complainant declined.  Soon thereafter, Gina took complainant to spend the
night with Gina=s sister, Denise Grant, and Denise=s children.  While
staying at Denise=s house, complainant told Denise that
appellant had been putting his finger inside her.  Denise told Gina what
complainant had told her, and Gina called the police.  The police made a report
and referred Gina to the Harris County Children=s Assessment
Center.

Gina took complainant to the Children=s Assessment
Center where she spoke with a forensic interviewer.  The interviewer later
testified that complainant told her that appellant had touched her when she
went to his apartment every Friday, Saturday, and Sunday.  These incidents
allegedly took place in the bedroom of his apartment when no one else but her
younger brother was present.  According to complainant, appellant would abuse
her while she was changing out of her school uniform into her play clothes. 
Complainant described to the interviewer how appellant had performed sexual
acts upon her, as well as caused her to perform sexual acts on him.  According
to complainant, these acts continued over a nine-month period.  Charges were
filed against appellant in June 2005.








Appellant was charged with two counts of aggravated sexual
assault of a child under the age of fourteen.  Appellant=s first trial
ended in a mistrial.  During the second trial, complainant testified with
graphic descriptions of the acts between  her  and appellant, as well as a
description of appellant=s genitals.  Additionally, the prosecution
presented the testimony of Gina, the forensic interviewer, complainant=s examining
physician, and her Aunt Denise.  

The prosecution also introduced the testimony of Roger
Blunt.  Blunt, who had an extensive criminal history, had been in the same jail
pod with appellant while they awaited trial for unrelated offenses.  Blunt
testified that after he and appellant had been together long enough to become
acquainted, appellant began to tell him about the circumstances of his arrest. 
Further, appellant admitted to abusing complainant and told Blunt of his acts
in graphic detail.  Blunt indicated that appellant became physically aroused
when describing the abuse of his daughter.  Blunt also testified that another
inmate named AArsonal@ had heard
appellant relate the same information.  Appellant did not call any witnesses,
other than himself, to contradict this testimony.

Appellant was convicted on both counts and sentenced to
forty-five years= confinement in the Institutional Division
of the Texas Department of Criminal Justice for each charge, to be served
concurrently.  Appellant then timely filed this appeal.

After giving notice of appeal, and after obtaining new
counsel, appellant filed a motion for new trial.  The basis for this motion was
that appellant was denied the effective assistance of counsel during his trial
because his trial counsel failed to investigate or subpoena a witness who could
have contradicted Blunt=s testimony.  The trial court reviewed
affidavits of appellant=s trial counsel, appellant, appellant=s wife Shirley,
and Shapreal James ArceneauxCthe witness Blunt identified in his trial
testimony as AArsonal.@  Both appellant
and Arceneaux denied that the holding-cell conversations ever took place. 
Further, both appellant and his wife stated that appellant=s trial counsel
had been informed of a witness who could contradict Blunt=s testimony, but
that appellant=s lawyer failed to investigate or subpoena testimony
from this witness.  After reviewing these affidavits, the court denied
appellant=s motion for new trial.








ANALYSIS

Appellant challenges his conviction on both counts
asserting that he was denied his constitutional right to effective counsel. 
Specifically, he argues that his court-appointed lawyer=s conduct fell
beneath the standard of reasonable assistance because he failed to investigate
or subpoena testimony from a rebuttal witness suggested by appellant.  The
State replies that adequate trial counsel was provided, and that appellant
himself told his lawyer not to contact the witness.

 In reviewing claims of ineffective assistance of counsel,
we apply a two‑prong test.  See Salinas v. State, 163 S.W.3d 734,
740 (Tex. Crim. App. 2005) (citing Strickland v. Washington, 466 U.S.
668, 687 (1984)).  To establish ineffective assistance, appellant must prove by
a preponderance of the evidence that (1) his trial counsel=s representation
fell below the standard of prevailing professional norms, and (2) there is a
reasonable probability that, but for counsel=s deficiency, the
result of the trial would have been different.  Id.

An accused is entitled to reasonably effective assistance
of counsel.  Strickland, 466 U.S. at 686; King v. State, 649
S.W.2d 42, 44 (Tex. Crim. App. 1983).  When evaluating a claim of ineffective
assistance, the appellate court looks to the totality of the representation and
the particular circumstances of each case.  Thompson v. State, 9 S.W.3d
808, 813 (Tex. Crim. App. 1999).  There is a strong presumption that counsel=s conduct fell
within a wide range of reasonable representation.  Salinas, 163 S.W.3d
at 740 (citing Mallet v.  State, 65 S.W.3d at 59, 63 (Tex.  Crim.  App. 
2001)).  To overcome the presumption of reasonable professional assistance, A[a]ny allegation
of ineffectiveness must be firmly founded in the record, and the record must
affirmatively demonstrate the alleged ineffectiveness.@  Thompson,
9 S.W.3d at 814.  When determining the validity of an ineffective-assistance
claim, any judicial review must be highly deferential to trial counsel and
avoid the distorting effects of hindsight.  Ingham v. State, 679 S.W.2d
503, 509 (Tex. Crim. App. 1984) (citing Strickland, 466 U.S. at 689). 








If a criminal defendant can prove that trial counsel=s performance was
deficient, he must still affirmatively prove he was prejudiced by counsel=s actions.  Thompson,
9 S.W.3d at 812.  This requires the defendant to demonstrate a reasonable
probability that the result of the proceeding would have been different if
trial counsel had acted professionally.  Id.  A reasonable probability
is a probability sufficient to undermine confidence in the outcome.  Mallett
v. State, 65 S.W.3d 59, 63 (Tex. Crim. App. 2001).

In the present case, appellant argues that his
court-appointed attorney=s conduct fell below the objective level
of performance for a reasonable attorney when he failed to either investigate
or subpoena the suggested  witness.  According to appellant=s affidavit
testimony introduced in support of his motion for new trial, appellant informed
his trial counsel of this witness in response to Blunt=s trial
testimony.  According to appellant, he told his attorney that (1) the
conversations described by Blunt never happened; (2) appellant and Blunt were
never alone in the cell, but were confined along with another inmate named
Arceneaux; and (3) Arceneaux could contradict Blunt=s testimony.   In
support of his motion for new trial, appellant also attached an affidavit of
Arceneaux testifying to all three points.  Further, appellant also attached an
affidavit of his wife, stating that appellant had discussed this witness with
counsel on the evening before the trial began.  

Appellant did testify at trial, stating that the
conversations Blunt described never took place.  However, appellant asserts
that because his attorney never called Arceneaux to testify, the jury was left
to believe either Blunt or appellant alone.  Consequently, as appellant argues,
the weight of Arceneaux=s testimony might have significantly
influenced the jury=s deliberations.








The State answered appellant=s motion for new
trial with an affidavit of appellant=s trial counsel. 
The attorney contends in the affidavit that the first time he heard of
Arceneaux was when appellant mentioned him immediately after Blunt=s trial
testimony.  According to counsel, he asked appellant for Arceneaux=s full name and
SPN[2]
so that he could contact him and investigate his potential testimony.  However,
as the attorney attests, when he asked appellant for the information the next
morning when appellant arrived for trial, appellant responded that counsel
should not contact Arceneaux because appellant didn=t want him
involved.  Despite these statements, appellant asserts that his attorney still
had a responsibility to investigate this possible witness.

A criminal defense lawyer has a duty to make an independent
investigation of the facts of a case, which includes seeking out and
interviewing potential witnesses.  Ex parte Welborn, 785 S.W.2d 391, 393
(Tex. Crim. App. 1990).  A breach of the duty to investigate may result in a
finding of ineffective assistance Awhere the result
is that any viable defense available to the accused is not advanced.@  Ex parte
Ybarra, 629 S.W.2d 943, 946 (Tex. Crim. App. 1982).  In defining the duty
to investigate, the United States Supreme Court has stated that Acounsel has a duty
to make reasonable investigations or to make a reasonable decision that makes
particular investigations unnecessary.  In any ineffectiveness case, a
particular decision not to investigate must be directly assessed for
reasonableness in all the circumstances, applying a heavy measure of deference
to counsel=s judgments.@  Strickland,
466 U.S. at 691.

In the present case, the record demonstrates that appellant=s trial counsel
offered to contact appellant=s suggested witness upon receiving his
full name and contact information from appellant.  However, not only did
appellant fail to deliver this information as his attorney requested, he
explicitly told Duer not to contact him.  Appellant=s own affidavit
does not refute this assertion.  








Appellant argues that it was unreasonable for appellant=s trial counsel
not to investigate Arceneaux.  Appellant asserts that the only apparent
difference from the evidence admitted in his first trial from that admitted in
his second was the addition of Blunt=s testimony in the
second trial.  Consequently, appellant argues his trial counsel should have
independently investigated the significance of the additional witness. 
However, the appellate record does not include the transcript of appellant=s first trial, so
we can cannot confirm or consider this point.  See Tex.  Rule App.  P. 
34.1; see also Kaman v. State, 923 S.W.2d 129, 131 (Tex. App.CHouston [1st
Dist.] 1996, no pet.) (appeals court could not consider indictment not included
within appellate record while reviewing denial of pretrial writ of habeas
corpus).  Further, appellant argues that his trial counsel should have been
able to discover the State=s witnesses before trial[3]
and investigate them fully for the purpose of anticipating possible rebuttal
witnesses.  However, these assertions are irrelevant in light of the fact that
appellant cannot point to evidence in the record demonstrating any reason for
his trial counsel=s decision, except that appellant himself
told his trial counsel not to involve Arceneaux. 

Applying, as we must, a Aheavy measure of
deference@ to appellant=s trial counsel=s decision not to
call or investigate a potential witness whom appellant had instructed counsel
not to contact, we hold that the record demonstrates his actions were
reasonable under the circumstances.  See Ex Parte Miller, No. 
14-07-00532-CR, 2008 WL 1795053, at *4 (Tex. App.CHouston [14th
Dist.] Apr. 22, 2008, pet. ref=d) (mem. op., not designated for
publication); see also Taylor v.  State, No.  01-06-00971-CR, 2008 WL
597271, at *4 (Tex. App.CHouston [1st Dist.] Mar. 6, 2008, pet. 
ref=d) (mem. op., not
designated for publication) (trial counsel=s decision not to
call or investigate potential defense witnesses was reasonable in light of
defendant=s express instructions not to involve the witnesses in
his case).  We overrule appellant=s sole issue.

 








CONCLUSION

Having overruled appellant=s sole issue on
appeal, we affirm the trial court=s judgment.

 

 

 

 

/s/      Jeff Brown

Justice

 

 

 

 

Judgment rendered
and Memorandum Opinion filed December 18, 2008.

Panel consists of
Chief Justice Hedges and Justices Guzman and Brown.

Do Not Publish C Tex.  R.  App.  P.  47.2(b).

 

 









[1]  At trial, Dr. Teri Turner, an associate professor of
pediatrics at Baylor College of Medicine, and  the pediatrician who examined
and diagnosed complainant, testified that genital herpes is either contracted
from genital-to-genital contact, or oral-to-genital contact. 





[2]  An SPN is the unique, case-specific identification
number issued to detainees when processed for custody purposes by the county
jail. 





[3]  The appellate record in this case does contain a
trial court-approved discovery order, but it does not specifically identify the
State=s anticipated witnesses.